No. 22-13371-DD

======

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
  *Plaintiff/appellee,*

**v.**

**JASON EDWARD LOPEZ,**
  *Defendant/appellant.*

_____

**On Appeal from the United States District Court
for the Southern District of Florida**

_____

**INITIAL BRIEF OF APPELLANT JASON EDWARD LOPEZ**

_____

**MICHAEL CARUSO**
  FEDERAL PUBLIC DEFENDER
**M. CAROLINE MCCRAE**
  ASSISTANT FEDERAL PUBLIC DEFENDER
  Attorney for Appellant Lopez
  250 S. Australian Ave, Suite 400
  West Palm Beach, FL 33401
  (561) 833-6288

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

======

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States v. Jason Edward Lopez
## Case No. 22-13371-DD

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, as required by 11th Cir. R. 26.1.

Caruso, Michael, Federal Public Defender

Centers for Medicare and Medicaid Services

Cuyler Jr, Reginald, Assistant United States Attorney

Fajardo Orshan, Ariana, Former United States Attorney

Gonzalez, Juan Antonio, United States Attorney

Hyman, Mitchell, Assistant United States Attorney

Lopez, Jason Edward, Defendant/Appellant

Matthewman, Hon William, United States Magistrate Judge

McCabe, Hon Ryon M., United States Magistrate Judge

McCrae, M. Caroline, Assistant Federal Public Defender

Middlebrooks, Hon. Donald M., United States District Judge

Miller, Lisa H.

Polite, Kenneth A.

Reinhart, Hon Bruce, United States Magistrate Judge

Rubio, Lisa Tobin, Assistant United States Attorney

Sanders, Jeremy R.

Torres, Hon Edwin G, Chief United States Magistrate Judge

United States of America, Plaintiff/Appellee

United States Small Business Administration

*s/M. Caroline McCrae*
M. Caroline McCrae

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Lopez respectfully submits that oral argument is necessary for the just resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ........................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF CITATIONS ....................................................................... iv

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

  I.     COURSE OF PROCEEDINGS, FACTS & DISPOSITION BELOW .............. 3

  II.    STANDARDS OF REVIEW ................................................................ 11

SUMMARY OF THE ARGUMENT ....................................................... 13

ARGUMENT AND CITATIONS TO AUTHORITY .............................. 17

  I. THE DISTRICT COURT ERRED WHEN IT ENHANCED MR. LOPEZ
    BASED ON THE INTENDED LOSS AMOUNT RATHER THAN THE
    ACTUAL LOSS AMOUNT .................................................................. 17

  II. THE DISTRICT COURT ERRED IN DENYING THE THIRD POINT
    FOR ACCEPTANCE OF RESPONSIBILITY WHERE THE
    GOVERNMENT IMPROPERLY WITHHELD ITS MOTION FOR THE
    THIRD POINT BASED ON MR. LOPEZ NOT PROVIDING
    SUBSTANTIAL ASSISTANCE AND THE GOVERNMENT'S FALSE
    ASSERTION THAT HE REPEATEDLY RESCHEDULED HIS
    GUILTY PLEA…………………………………………………..…23

  III. MR. LOPEZ'S 48 MONTH SENTENCE IS PROCEDURALLY
    AND SUBSTANTIVELY UNREASONABLE…………………………...……27

CONCLUSION ........................................................................... 36

CERTIFICATE OF COMPLIANCE........................................... 37

CERTIFICATE OF SERVICE.................................................... 38

iii

## TABLE OF CITATIONS

**C**ASES

*Auer v. Robbins*,

519 U.S. 452, 117 S.Ct. 905 (1997).......................................................19

*Bowles v. Seminole Rock & Sand Co.*,

325 U.S. 410, 65 S.Ct. 1215 (1945).......................................................19

*Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.*,

467 U.S. 837 (1984) ...................................................................13, 19

*Gall v. United States*,

552 U.S. 38, 128 S.Ct. 586 (2007)........................................... 12, 27-30

*Kimbrough v. United States*,

552 U.S. 85, 128 S.Ct. 558 (2007).................................................28-30

\*Kisor v. Wilkie,

__ U.S. __, 139 S.Ct. 2400 (2019) ............................................13, 19-22

\*Stinson v. United States,

508 U.S. 36, 113 S.Ct. 1913 (1993)........................................ 18, 19, 21

*United States v. Adelson*,

441 F. Supp. 2d 506 (S.D.N.Y. 2006) ..................................................34

*United States v. Baker*,

    445 F.3d 987 (7th Cir. 2006) ............................................................... 32

*United States v. Banks*,

    55 F.4th 246 (3d Cir. 2022) ............................................................... 21

*United States v. Booker*,

    543 U.S. 220, 125 S.Ct. 738 (2005)................................................28-31

*United States v. Crawford*,

    407 F.3d 1174 (11th Cir. 2005) ........................................................ 11

*United States v. Crisp*,

    454 F.3d 1285 (11th Cir. 2006) ........................................................ 31

*\*United States v. Dupree*,

    57 F.4th 1269 (11th Cir. 2023) (*en banc*) ............... 13-14, 18-19, 21-22

*United States v. Gupta*,

    904 F. Supp. 2d 349 (S.D.N.Y. 2012) ................................................ 34

*United States v. Irey*,

    612 F.3d 1160 (11th Cir. 2010) ................................................... 11, 30

*\*United States v. Johnson*,

    980 F.3d 1364 (11th Cir. 2020) ................................................... 14, 24

*United States v. Martin,*

    455 F.3d 1227 (11th Cir. 2006) ............................................... 12, 30, 32

*United States v. Prosperi,*

    686 F.3d 32 (1st Cir. 2012) ........................................................... 31, 32

*United States v. Riccardi,*

    989 F.3d 476 (6th Cir. 2021) ............................................................. 22

*United States v. Smith,*

    54 F.3d 690 (11th Cir. 1995) ............................................................. 21

*United States v. Spencer,*

    700 F.3d 317 (8th Cir. 2012) ............................................................. 33

*United States v. Weir,*

    51 F.3d 1031 (11th Cir. 1995) ........................................................... 21

## S<span>TATUTES AND OTHER AUTHORITIES</span>

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3553(a) ........................................................... 12, 15, 27-31

18 U.S.C. § 3742 .............................................................................. 1

28 U.S.C. § 1291 .............................................................................. 1

U.S.S.G. § 2B1.1 ........................................................ 8, 13-14, 17, 21-22

U.S.S.G. § 2B1.1(b)(1) ............................................................ 9, 17, 18

U.S.S.G. § 2B1.1(b)(7) ............................................................ 9, 13, 18

U.S.S.G. § 3E1.1(b) ................................................................ 14, 23, 24

U.S.S.G. § 4B1.2 ......................................................................... 14, 21

## STATEMENT OF JURISDICTION

The District Court had jurisdiction of this case pursuant to 18 U.S.C. § 3231, because the defendant was charged with offenses against the laws of the United States. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The notice of appeal was timely filed on October 4, 2022, (DE 44), from the final judgment and commitment order entered on September 21, 2022, (DE 43), that disposes of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

Whether the District Court Erred when it Enhanced Mr. Lopez Based on the Intended Loss Amount Rather than the Actual Loss Amount

Whether the District Court Erred in Denying the Third Point for Acceptance of Responsibility where the Government Improperly Withheld its Motion for the Third Point based on Mr. Lopez Not Providing Substantial Assistance and the Government's False Assertion that Mr. Lopez had Repeatedly Rescheduled his Guilty Plea

Whether Mr. Lopez's 48 Month Sentence was Procedurally and Substantively Unreasonable

## STATEMENT OF THE CASE

Jason Edward Lopez, the appellant, was the defendant in the District Court and will be referred to by name or as the defendant. The appellee, the United States of America, will be referred to as the government. Pleadings in the docket are cited as "DE __." The relevant transcripts appear at DE's 54, 55, 57, 59, and 61.

Mr. Lopez is incarcerated.

## I.    COURSE OF PROCEEDINGS, FACTS & DISPOSITION IN THE DISTRICT COURT

Mr. Lopez is a 38-year-old father of two minor children, who are under 5 years old. (DE 38: p.4 & ¶56). One of his children requires specialized treatment in order to help learn and manage daily tasks. (DE 38: ¶56). Prior to his arrest in this case, Mr. Lopez was his family's sole financial provider. (DE 38: ¶56). The letters in support of sentencing that were written on his behalf demonstrate Mr. Lopez's commitment to his family. (DE's 40-1 & 40-2). Lawrence Daniel Schneider, a retired law enforcement officer, who has known Mr. Lopez for 6 years, describes him as a father, a husband, and a man whose "devotion to his family has no bounds." (DE 40-1). Ordained Minister Benjamin Dobbs attests that Mr. Lopez is "an outstanding loving, and caring [f]ather . . . ." (DE 40-2). Mr.

3

Lopez "is involved everyday with caring, providing, and nurturing [his children] with love . . . ." (DE 40-2).

In addition to providing support to his immediately family, Mr. Lopez assists his elderly mother with her mobility issues and her necessary medical appointments. (DE 38: ¶¶54-55). Because he is an only child, (DE 38:¶55), Mr. Lopez's assistance is irreplaceable. Unfortunately, Mr. Lopez grew up with a strained relationship with his father, which worsened when Mr. Lopez was struggling with substance abuse. (DE 38: ¶55). However, since maintaining his sobriety, Mr. Lopez has since reconciled with his father, and they now have a strong relationship. (DE 38: ¶55). Mr. Lopez's neighbors also describe the help Mr. Lopez provides to his parents, as well as his neighbors, including helping elderly neighbors prepare for south Florida storms. (DE 40-3: 1).

As a young man, Mr. Lopez struggled with drug and alcohol addiction for around 10 years, but after gaining his sobriety, he has helped others by sponsoring them through their recovery. (DE 38: ¶61). In a letter in support of him at sentencing, he was described as "kind with a servant's heart and positive attitude, always willing to help others, willing to go the extra mile, and being solution-focused with his friends,

4

family, and even in a professional setting." (DE 40-2). He has impacted his community by "helping others in the recovery community[,] assisting alcoholics[] and drug addicts in finding hope[] and a solution to change their ways." (DE 40-2). He is known as a man of faith who is committed to living by his values. (DE 40-1). Since becoming sober, Mr. Lopez has maintained a good employment history. (DE 38: ¶¶61, 65-68). During the indictment period, Mr. Lopez maintained legitimate employment, and he continued working until his self-surrender date when he began his prison sentence for this case.

On April 14, 2022, Mr. Lopez was charged in a 10-count indictment in the Southern District of Florida with one count of conspiracy to commit health care fraud and wire fraud, four counts of health care fraud, one count of conspiracy to defraud the United States and pay health care kickbacks, three counts of payment of kickbacks in connection with a federal health care program, and one count of wire fraud. (DE 3). On April 14, 2022, Mr. Lopez made his initial appearance in the case, and he was released on bond. (DE 10). Pretrial services records indicate he complied with all Court ordered conditions of release. (DE 38:¶3). He remained out of custody until his self-surrender date.

Mr. Lopez was alleged to have conspired with Christina Pawlak, Frank Bianco, and Glenda Stockton to commit health care and wire fraud. (DE 38:¶8). These four individuals defrauded the United States by knowingly paying kickbacks and bribes to persons who referred individuals for services, including durable medical equipment ("DME"), that were often unnecessary, and were paid in whole or in part by Medicare. (DE 38:¶8). The DME companies that Mr. Lopez was involved with submitted $2,598,318 in Medicare claims and received $903,937 from Medicare. (DE 38: ¶21). Mr. Lopez also had a loan application submitted to the United States Small Business Administration ("SBA") to obtain low-interest financing on a $105,000 loan and a $7,000 advance. (DE 38:¶¶19-20). The combined intended loss for these offenses was $2,703,318; however, the actual loss was $910,937.

Before Mr. Lopez was arraigned, the District Court scheduled his trial for June 27, 2022, set a calendar call hearing on June 22, 2022, and warned that qualification for acceptance of responsibility "is jeopardized if <u>an intention to enter a plea of guilty is not announced</u> at or before the calendar call . . ." (DE 18:1) (emphasis added). Before the stated June 22, 2022 deadline, Mr. Lopez filed an unopposed motion to continue his

calendar call and trial, indicating that Mr. Lopez wanted to enter a guilty plea in the case. (DE 26). The motion further indicated that the parties had not finalized the terms of a plea agreement, and that defense counsel was scheduled to begin a two-week trial in another case on June 21, 2022. (DE 26).

In response, the District Court scheduled the matter for a hearing on June 17, 2022. (DE 27). At the hearing, defense counsel again informed the District Court and the government that Mr. Lopez intended to plead guilty and did not desire to go to trial. (DE 54:2). Defense counsel requested a three-week continuance in order to allow her to complete her two-week trial and finish negotiating the terms of the plea agreement and factual proffer with the government. (DE 54:2). The government indicated that "[t]he government does not object to continuing negotiating in good faith to see if we could hash out those issues. But at this juncture, right now, we haven't been able to hash out the terms of a plea agreement that will be workable for both sides." (DE 54:3). The District Court granted the defense request, noted the defendant's intent to plead guilty, and extended the deadline for timely acceptance of responsibility to July 6, 2022. (DE 28). The District Court directed

counsel to notify chambers and the government before 2 pm on July 6, 2022 that he would be changing his plea in order to receive acceptance of responsibility. (DE 29). At no point did the government indicate that an earlier deadline was needed, and at no point did the government suggest that it believed Mr. Lopez was intending to proceed to trial.

In compliance with the District Court's order regarding acceptance of responsibility, on the morning of July 6, 2022, defense counsel e-mailed chambers and the government that Mr. Lopez wanted to plead guilty. The parties had not reached an agreed plea agreement, but Mr. Lopez intended to enter an open plea. The next day, the change of plea was referred to the magistrate judge, (DE 30), and the change of plea was scheduled for July 14, 2022. (DE 31). On that date, Mr. Lopez entered a guilty plea to every count in the indictment. (DE 61). Mr. Lopez had not previously been convicted of a felony offense. (DE 38:¶¶43-47).

A draft presentence investigation report ("PSI") was prepared. (DE 36). The PSI indicated that the guideline for all counts was § 2B1.1. (DE 36:¶33). It began with a base offense level of 7.[1] (DE 36:¶33). It indicated

---

[1] Because Mr. Lopez did not reach an agreed plea agreement with the government, he resolved his case with an open plea. As such, he had to plead guilty to the indictment as charged, which as to count one, included

that the loss amount in the case was $2,694,318, which resulted in a 16 level enhancement pursuant to § 2B1.1(b)(1)(I) and a 2 level enhancement pursuant to § 2B1.1(b)(7). (DE 36:¶33). The PSI also recommended a 2 level enhancement for sophisticated means and a 3 level enhancement for aggravated role. (DE 36:¶¶33&35). This resulted in an adjusted offense level of 30. (DE 36:¶38). Based on a 3 level reduction for acceptance of responsibility, the PSI recommended a total offense level of 27. (DE 36:¶¶40-42). With one criminal history point, Mr. Lopez has a criminal history category of I. (DE 36:¶48). Based on the PSI, Mr. Lopez's advisory sentencing range was 70 to 87 months. (DE 36:¶78).

Mr. Lopez raised objections to the PSI, including the loss amount proffered in the PSI, because it was based on intended loss, instead of actual loss. (DE 37:3-6). Mr. Lopez objected to the sophisticated means and aggravated role enhancements. (DE 37:6-7). The government

---

a conspiracy to commit both health care fraud and wire fraud. (DE 3: 7-8). The government allowed his co-conspirators, Christina Pawlak, Frank Bianco, and Glenda Stockton, to only plea to the health care conspiracy, which reduced their base offense levels from a 7 to a 6. *See United States v. Christina Pawlak*, 21-CR-80134-Cannon (S.D. Fla.) (DE 16:9); *United States v. Frank Bianco*, 21-CR-80133-Middlebrooks (S.D. Fla.) (DE 15:8); *United States v. Glenda Stockton*, 21-CR-80129-Rosenberg (S.D. Fla.) (DE 15:8).

responded to Mr. Lopez's objections. (DE 39). It opposed his objections to the loss amount and aggravated role enhancements, but did not oppose his objection to sophisticated means. (DE 39). The government did not object to the PSI, and never indicated that it did not believe Mr. Lopez should receive a 3-point reduction for acceptance of responsibility.

At sentencing, the District Court overruled Mr. Lopez's objections to loss amount, (DE 55:5), and aggravated role, (DE 55:5 & 15), but sustained his objection to sophisticated means, (DE 55:4). Thus, the District Court lowered Mr. Lopez's offense level by two levels and calculated his guidelines to be 57 to 71. (DE 55:16).

However, the government then indicated, for the first time, that it did not believe Mr. Lopez should receive a third point for acceptance of responsibility. (DE 55: 7-18). The government explained that it would not move for the third point for acceptance of responsibility, because "[t]hat motion is reserved for defendants that also are cooperating. And of course at this juncture Mr. Lopez isn't cooperating so the government won't be making that." (DE 55:18). The government insisted that the third point is for substantial assistance. (DE 55:18). The government then falsely claimed that "what we had to do in moving the change of plea several

times, it is the position of the government that we will not be making the motion for the additional point." (DE 55: 9). The government took this position despite acknowledging that Mr. Lopez had met the deadline the District Court set for acceptance of responsibility. (DE 55:19). The District Court sustained the government's objection to the third point and increased Mr. Lopez's guidelines to 63 to 78 months. (DE 55:21).

The District Court sentenced Mr. Lopez to 48 months imprisonment followed by 3 years of supervised release. (DE 55:30). Mr. Lopez objected to the sentence being procedurally and substantively unreasonable. (DE 55:31-32).

Mr. Lopez timely appealed. (DE 44).

## II.    STANDARDS OF REVIEW

The district court must properly calculate the advisory sentencing guidelines. *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005). Questions of fact under the guidelines are reviewed for clear error and questions of law are reviewed *de novo. Id*. at 1177-78. Even if the Court finds that the District Court complied with procedural requirements, the Court must still review the sentence for "substantive reasonableness." *United States v. Irey*, 612 F.3d 1160, 1189-90 (11th Cir.

2010) (*en banc*). The reasonableness of a sentence is reviewed for an "abuse of discretion." *Gall v. United States*, 552 U.S. 38, 51 (2007). This Court will consider the final sentence, in its entirety, in light of the statutory factors to be considered in imposing a sentence, pursuant to 18 U.S.C. § 3553(a). *United States v. Martin*, 455 F.3d 1227, 1237 (11th Cir. 2006).

## SUMMARY OF THE ARGUMENT

The District Court erred when it enhanced Mr. Lopez's sentence based on the intended loss amount rather than the actual loss amount. The guideline applicable to this case, § 2B1.1, provides for an enhancement based on the loss amount. Additionally, this guideline provides for an additional 2 level enhancement for Federal health care offenses involving more than a $1,000,000 loss. U.S.S.G. § 2B1.1(b)(7). The District Court erred in relying on the intended loss amount, rather than the actual loss amount. As this Court recognized in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*), guideline commentary deserves limited deference based on the same principles that apply in administrative law for administrative agencies' interpretations of their own regulations. As *Dupree* recognized, *Kisor v. Wilkie*, __ U.S. __, 139 S.Ct. 2400, 2415 (2019), made clear that deference to agency interpretations of regulations should not be granted unless the regulation at issue was genuinely ambiguous. To make that determination, "a court must exhaust all the 'traditional tools' of construction." *Kisor*, __ U.S. at __, 139 S.Ct. at 2415, citing *Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). If the court found a regulation to be

13

genuinely ambiguous, the court had to employ additional tests to determine if deference was appropriate under those circumstances. This Court's decision in *Dupree* is not limited to U.S.S.G. § 4B1.2. Rather, *Dupree* substantially impacts Mr. Lopez's case under U.S.S.G. § 2B1.1.

Mr. Lopez's case involves an unambiguous guideline, U.S.S.G. § 2B1.1. The text of § 2B1.1 simply instructs the court to calculate monetary loss. The text of § 2B1.1 does not hint at the expansive concept of "intended loss." Accordingly, the District Court erred by enhancing Mr. Lopez's guideline range by 4 levels based on the amount of intended loss, rather than actual loss.

In addition to improperly enhancing Mr. Lopez's sentence based on intended loss amount, the District Court erred in denying Mr. Lopez the third point for acceptance of responsibility. It is proper for courts to review whether the Government has improperly refused to make a § 3E1.1(b) motion. *United States v. Johnson*, 980 F.3d 1364 (11th Cir. 2020). Mr. Lopez announced his intention to plead guilty sufficiently early to allow the Government to avoid to having to prepare for trial. This allowed the Government to allocate its resources efficiently. The government never challenged that Mr. Lopez met this standard. Mr.

Lopez was entitled to a 3 level reduction for acceptance of responsibility and the District Court erred in denying him the third point.

Mr. Lopez's 48 month sentence is procedurally and substantively unreasonable. As noted above, Mr. Lopez's sentence was based on a miscalculation of the guidelines due to the erroneous reliance on intended loss rather than actual loss and the refusal to award him the third point for acceptance of responsibility. These errors significantly increased the guideline range for Mr. Lopez's sentence. Additionally, the District Court failed to fashion a sentence that was sufficient but not greater than necessary to achieve the goals of § 3553(a). Mr. Lopez poses a low risk of recidivism. His work history and connection to the community mitigate against the need for a lengthy prison sentence. Based on the convictions in this case, he sustained a substantial punishment in the loss of his civil rights, including the right to vote and to possess firearms. Mr. Lopez's sentence was not proportional to his co-conspirators' sentence.

The fraud guidelines fail to provide for a reasonable sentence that is sufficient but not greater than necessary to achieve the goals of sentencing, because they place an inordinate emphasis on the amount of loss. By focusing so much on loss amount, the fraud guidelines fail to

account for the panoply of factors courts must consider at sentencing and effectively guarantee irrational sentences. The District Court erred in imposing a 48 month sentence in this case.

## ARGUMENT AND CITATIONS TO AUTHORITY

I.    **THE DISTRICT COURT ERRED WHEN IT ENHANCED MR. LOPEZ BASED ON THE INTENDED LOSS AMOUNT RATHER THAN THE ACTUAL LOSS AMOUNT**

Mr. Lopez's offenses are covered by § 2B1.1 of the Sentencing Guidelines. As is relevant to this case, the text of § 2B1.1(b)(1) states:

(1)    If the loss exceeded $6,500, increase the offense level as follows:

Loss (apply the greatest)            Increase in Level

. . .

(H)  More than $550,000 . . . . . . . . . . . . . . add 14
(I)  More than $1,500,000 . . . . . . . . . . . . . . add 16

U.S.S.G. § 2B1.1. Additionally, this guideline provides for a 2 level enhancement for Federal health care offenses involving a government health care program where the loss under subsection (b)(1) of the § 2B1.1 was more than $1,000,000. U.S.S.G. § 2B1.1(b)(7). Neither of these sections indicates that "loss" includes anything other than actual loss, such as intended loss. However, the commentary under § 2B1.1 attempts to broaden the definition of loss beyond actual loss. In particular, note 3(A) states, "General Rule. — . . . . loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). Relying on this

17

commentary, the PSI calculated the loss in this case based on the intended loss of $2,598,318, rather than the actual loss. (*See* DE 38:¶26).

The District Court overruled Mr. Lopez's objection to using intended loss and adopted the PSI's recommendations regarding the loss amount. This resulted in a 16 level enhancement pursuant to § 2B1.1(b)(1)(I), rather than a 14 level enhancement pursuant to § 2B1.1(b)(1)(H), as well as a 2 level enhancement pursuant to § 2B1.1(b)(7). Keeping the District Court's other guidelines rulings the same, these additional 4 levels increased Mr. Lopez's guidelines from 41 to 51 months up to 63 to 78 months. Thus, relying on intended loss resulted in a 22 to 27 month increase in Mr. Lopez's guidelines.

Because the commentary regarding loss is inconsistent with and adds to the guideline text, the commentary cannot prevail. *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913 (1993) (guideline commentary invalid if it is inconsistent with or a plainly erroneous reading of the guideline text). On January 18, 2023, this Court issued its opinion in *Dupree*. The *Dupree* case changed the law in this Circuit with respect to the operation of the Guidelines as interpreted by the guideline commentary. *Dupree*, 57 F. 4th at 1279. Specifically, *Dupree* recognized

18

that the Supreme Court had limited the deference given to the guideline
commentary through analogous cases in the field of administrative law,
equating the guideline commentary to administrative agencies'
interpretations of their own regulations. *Id.* at 1276-77. Such comparison
had carried through the Supreme Court cases of *Bowles v. Seminole Rock
& Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215 (1945); *Auer v. Robbins*, 519
U.S. 452, 117 S.Ct. 905 (1997), and *Stinson v. United States*, 508 U.S. 36,
113 S.Ct. 1913 (1993). Under these cases, however, the deference doctrine
had become "a caricature" of proper deference, as deference to agency
interpretations or guideline commentary had become "reflexive." *Dupree*,
at 1275, *citing Kisor v. Wilkie,* __ U.S. __, 139 S.Ct. 2400, 2415 (2019).

The Supreme Court changed this practice of reflexive deference in
*Kisor,* __ U.S. __, 139 S.Ct. 2400. *Kisor* made clear that deference to
agency interpretations of regulations should not be granted unless the
regulation at issue was genuinely ambiguous. To make that
determination, "a court must exhaust all the 'traditional tools' of
construction." *Kisor*, __ U.S. at __, 139 S.Ct. at 2415, citing *Chevron
U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843
n.9 (1984)). "[A] court must 'carefully consider[]' the text, structure,

19

history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (citation omitted). If after employing these tools, "uncertainty d[id] not exist, there [wa]s no plausible reason for deference. The regulation then just mean[t] what it mean[t] – and the court must give it effect, as the court would any law." *Kisor*, __ U.S. at __, 139 S.Ct. at 2415.

If a regulation is genuinely ambiguous, a court must employ additional tests to determine if deference is appropriate under the circumstances. The *Kisor* court found that this was a broad-searching inquiry, and thus it gave "markers" as guidance. *Kisor*, __ U.S. at __, 139 S.Ct. at 2416. *Kisor* stated that if the regulation was ambiguous, the agency's interpretation still had to be "reasonable," given the character and the context of the regulation. *Kisor*, __ U.S. at __, 139 S.Ct. at 2415-16. This meant it had to "come within the zone of ambiguity the court ha[d] identified after employing all its interpretive tools." Further, even if an agency's interpretation could be classified as "reasonable," there were still other considerations before deference could be given. *Kisor*, __ U.S. at __, 139 S.Ct. at 2416. The interpretation had to "be the agency's 'authoritative' or 'official position,'" it had to "in some way implicate [the

agency's] substantive expertise," and it had to "reflect [the] fair and considered judgment" of the agency. *Id*. at 2416-17. If all these tests were met, then deference was appropriate.

This Court in *Dupree* determined that the limitations set out in *Kisor* applied to *Stinson* and the federal sentencing guidelines. *Dupree*, 57 F. 4th at 1275. This resulted in *Dupree*'s abrogating prior Eleventh Circuit authority *United States v. Weir*, 51 F.3d 1031 (11th Cir. 1995), and *United States v. Smith*, 54 F.3d 690 (11th Cir. 1995), which had previously given the reflexive-type of deference to U.S.S.G. § 4B1.2's commentary. *Dupree*, 57 F. 4th at 1279, n.9. That commentary purported to define a "controlled substance offense" to include inchoate offenses, although the text of § 4B1.2 did not itself include inchoate offenses.

*Dupree's* holding applying *Kisor* to *Stinson* and the federal sentencing guidelines is not limited to U.S.S.G. § 4B1.2. Rather, *Dupree* substantially impacts Mr. Lopez's case under U.S.S.G. § 2B1.1. *Dupree* makes clear that there was error in Mr. Lopez's case, because the intended loss should never have been utilized as part of Mr. Lopez's guideline calculation in the first place. *See United States v. Banks*, 55 F.4th 246, 257-58 (3d Cir. 2022) (applying *Kisor* to § 2B1.1 note (3)(A),

21

the court found, "The Guideline does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary. . . . The ordinary meaning of loss in the context of § 2B1.1 [an enhancement for basic economic offenses] is 'actual loss.' This result is confirmed by dictionary definitions of 'loss.'"); *United States v. Riccardi*, 989 F.3d 476,486 (6th Cir. 2021) (applying *Kisor* to § 2B1.1 note (3)(F) where gift cards averaging $35 each were deemed to cause a $500 loss each, the court found, "[c]ommentary may only interpret the guideline. And a $500 mandatory minimum cannot be described as an interpretation of the word 'loss.' Rather, it is a substantive legislative rule that belongs in the guideline itself to have force.").

Similar to *Dupree*, Mr. Lopez's case involves an unambiguous guideline, U.S.S.G. § 2B1.1. The text of § 2B1.1 simply instructs the court to calculate monetary loss and then select the corresponding enhancement level on a loss table that consists of graduated penalties based on increasing loss amounts. The text of § 2B1.1 does not hint at the expansive concept of "intended loss" regardless of the actual loss. Note 3(A), therefore, is an illegal expansion of the § 2B1.1 guideline, and thus under *Dupree*, it could not be utilized to calculate loss under §2B1.1.

Accordingly, the District Court erred by enhancing Mr. Lopez's guideline range by 4 levels based on the amount of intended loss, rather than actual loss.

## II.    THE DISTRICT COURT ERRED IN DENYING THE THIRD POINT FOR ACCEPTANCE OF RESPONSIBILITY WHERE THE GOVERNMENT IMPROPERLY WITHHELD IT MOTION FOR THE THIRD POINT BASED ON MR. LOPEZ NOT PROVIDING SUBSTANTIAL ASSISTANCE AND THE GOVERNMENT'S FALSE ASSERTION THAT HE REPEATEDLY RESCHEDULED HIS GUILTY PLEA

Depending on whether the total offense level is less than 16 or is 16 or greater, the Guidelines provide for a two or three level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. This guideline provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct <u>by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial</u> and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1 (emphasis added). The government may justify withholding a motion for the third point only on grounds that serve an

interest identified in § 3E1.1. *United States v. Johnson*, 980 F.3d 1364, 1380 (11th Cir. 2020). "[C]ircuit courts have concluded that . . . judicial review is available to determine whether the Government has improperly refused to make a § 3E1.1(b) motion." *Id.*

Despite Mr. Lopez's early announcement of his intention to plead guilty and his offense level exceeding 16, Mr. Lopez was only awarded 2 points for acceptance of responsibility in this case. The government did not object to Mr. Lopez receiving a 2 level reduction, and it did not argue that Mr. Lopez had failed to accept responsibility. (DE 55:17). The District Court erred in allowing the government to withhold the third point for acceptance of responsibility.

Before Mr. Lopez was arraigned, the District Court set a deadline of June 22, 2022 for qualification of acceptance of responsibility. (DE 18). Mr. Lopez indicated that he intended to plead guilty in the case before that deadline elapsed. (DE 26). However, because the parties needed additional time to attempt to negotiate the terms of a plea agreement, the District Court extended the deadline for acceptance of responsibility to July 6, 2022. (DE 29). The government did not oppose this extension, and even told the District Court, "[t]he government does not object to

24

continuing negotiating in good faith to see if we could hash out those issues. But at this juncture, right now, we haven't been able to hash out the terms of a plea agreement that will be workable for both sides." (DE 54:3). Thus, the District Court reset the hearing in order to give the parties an opportunity to negotiate in good faith. Again, before the deadline, Mr. Lopez indicated a desire to enter a guilty plea in the case. At no time did the government indicate it needed an earlier indication of a desire to plead guilty, nor did the government ever suggest that they believed Mr. Lopez was proceeding to trial and had to expend resources preparing for trial. Mr. Lopez provided timely notification to the authorities of his intention to enter a plea of guilty, and the government avoided preparing for trial and was able to allocate their resources efficiently. The government never challenged that Mr. Lopez met this standard. (*See* DE 55:18).

Instead, the government admitted it was withholding the third point for acceptance, because Mr. Lopez did not provide substantial assistance. (DE 55:p.18). The government indicated that in its view, "[t]hat motion is reserved for defendants that also are cooperating. And of course at this juncture Mr. Lopez isn't cooperating . . . ." (DE 55: p.18).

The District Court indicated it "had never known the third point to deal with . . . cooperation." (DE 55:p.18).

Then, the government falsely claimed that "as you have seen in this case and what we had to do in moving the change of plea several times, it is the position of the government that we will not be making the motion for the additional point." (DE 55:p.19, l.2-5). However, this statement was false and misleading. The change of plea was not moved "several times", as the government claimed. The change of plea was moved one time in order to see if the parties could reach a plea agreement rather than having Mr. Lopez plead open to the District Court. (DE 54).

During this reset period, the government never believed Mr. Lopez was not going to plead guilty. The government was able to avoid preparing for trial and was able to allocate its resources efficiently. The government did not object to the reset of the change of plea and indicated it could continue to negotiate "in good faith" in the case. (DE 54:3). However, at sentencing, the government relied on this single reset of the change of plea hearing to deny Mr. Lopez the third point for acceptance. This is an improper reason to deny the third point, and Mr. Lopez is entitled to receive full credit for accepting responsibility.

### III.  MR. LOPEZ'S 48 MONTH SENTENCE IS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE

The first step in the advisory guideline sentencing process is to properly calculate the guideline range. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007). A court should then consider the sentencing factors under 18 U.S.C. § 3553(a), and determine if a departure or variance from the guideline range is warranted. *Gall*, 552 U.S. at 49-50, 128 S.Ct. at 596-97. If the circumstances compel a variance, the court must determine the degree of variance that is required. *Gall*, 552 U.S. at 49-50, 128 S. Ct. at 596-97. Accordingly, the appellate court must:

> [F]irst ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . .

*Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

27

The mandatory sentencing factors to be considered pursuant to 18 U.S.C. § 3553(a) include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to avoid unwarranted disparities among defendants; the federal guideline ranges; and the need for the sentence to promote respect for the law, provide a just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and services. Moreover, the premise guiding all these factors is that the sentence should be "sufficient, but not greater than necessary" to comply with the enumerated goals of sentencing. 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6, 128 S.Ct. at 596 n.6; *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 570 (2007); *United States v. Booker*, 543 U.S. 220, 268-69, 125 S.Ct. 738, 769-70 (2005).

The district court imposed an unreasonable sentence in excess of that required by the statutory sentencing criteria and the imperatives of the Sentencing Reform Act, 18 U.S.C. § 3553(a). Mr. Lopez's sentence was unreasonable, because it was based on improper guideline calculations and it did not adequately take into consideration the sentencing factors under 18 U.S.C. § 3553(a)(1)-(7). See Gall, 552 U.S. at

50, n.6; *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Booker*, 543 U.S. 220.

As noted above, Mr. Lopez's sentence was based on a miscalculation of the guidelines due to the erroneous reliance on intended loss rather than actual loss and the refusal to award him the third point for acceptance of responsibility. These errors in calculating the guidelines significantly increased the guideline range for Mr. Lopez's sentence. As the Supreme Court has stated in *Gall*, the first step in a reasonableness review is to ensure that the district court properly calculated the guidelines. *Gall*, 552 U.S. at 51. In the instant case, the District Court did not comply with *Gall*'s first step because the District Court improperly enhanced Mr. Lopez's sentence based on intended loss and failed to award him full credit for accepting responsibility. Because these miscalculations substantially altered the framework and improperly raised the baseline from which the court selected Mr. Lopez's sentence, the resulting sentence was patently unreasonable. *See Gall*, 552 U.S. at 51.

Additionally, Mr. Lopez's sentence was substantively unreasonable. Pursuant to 18 U.S.C. § 3553(a), several factors must be

29

considered in imposing a sentence, including the nature and circumstances of the offense; the history and characteristics of the defendant; the need to avoid unwarranted disparities among defendants; the federal guidelines range; and the need for the sentence to promote respect for the law, provide a just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and services. 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6; *Kimbrough*, 552 U.S. at 101. A district court must not only consider the proper factors, but it must also balance those factors reasonably. *Irey*, 612 F.3d at 1189. Moreover, the premise guiding all of these factors is that the sentence should be "sufficient, but not greater than necessary" to comply with its enumerated goals. 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 50 n.6; *Kimbrough*, 552 U.S. at 101.

While review for reasonableness is deferential, this Court has stressed that a district court's discretion in imposing the sentence is not unfettered. In fact, this Court has reversed sentences as unreasonable post-*Booker*. *See United States v. Martin*, 455 F.3d 1227, 1239 (11th Cir. 2006) (reversing post-*Booker* sentence as unreasonable, albeit too lenient, where the sentence imposed failed both to take into account and to

30

promote statutory sentencing criteria); *United States v. Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006) (reversing post-*Booker* sentence because the court relied on one factor to the exclusion of other § 3553(a) factors).

Mr. Lopez poses a low risk of recidivism. He was charged with non-violent, fraud offenses. The Sentencing Commission has recognized that such individuals present a lower risk of recidivism than other offenders. *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, U.S. Sentencing Commission, at 13 (May 2004), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last visited Feb. 22, 2023). Courts have recognized the inherent punishment a person endures where forced into the criminal justice system for the first time. *See, e.g.*, *United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012) (affirming the district court's probationary sentence despite a guideline range of 87 to 108 months imprisonment). Such courts have noted:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the

> penalty and the burden that persons face when called to
> account, as these men are, for the wrong that they committed.

*Id.* This sentiment applies equally to a person who has not previously been convicted of a felony. Courts have recognized that a prison term means more to a person who has not been sentenced to prison before. *See, e.g., United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming the district courts downward departure for an offender sentenced to his first prison term). Mr. Lopez's work history and connection to the community mitigate against the need for a lengthy prison sentence. Based on the convictions in this case, he sustained a substantial punishment in the loss of his civil rights, including the right to vote and to possess firearms.

Proportionate sentencing promotes respect for the law, and ensures that similar offenses or offenders will be sentenced similarly and dissimilar offenses and offenders will be sentenced differently. Courts can depart downward in order to achieve proportionate sentence among co-conspirators. *See, e.g., United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (upholding a sentence 91 months below the career offender guideline range which was imposed, in part, in order to avoid unwarranted sentencing disparity between co-conspirators). Mr. Lopez's

sentence was not proportional to his co-conspirators. The District Court sentenced Mr. Bianco to 27 months imprisonment, but sentenced Mr. Lopez to nearly double that amount. Yet, unlike Mr. Bianco, Mr. Lopez had not previously been convicted of a felony. Ms. Pawlak, who had previously served a prison sentence and who pled guilty involving a $4,129,428 intended loss amount was sentenced to 85 months *United States v. Christina Pawlak,* 21-CR-80134-Cannon (S.D. Fla.) (DE 40). Ms. Pawlak's role was significantly greater than Mr. Lopez's. Despite having a criminal history category of two, Ms. Stockton was only sentenced to 3 years probation for her role. *United States v. Glenda Stockton*, 21-CR-80129-Rosenberg (DEs 12, 27, & 29). The District Court failed to sentence Mr. Lopez proportionally to his co-conspirators when it sentenced Mr. Lopez to 48 months in this case.

The fraud guidelines fail to provide for a reasonable sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. The fraud guidelines have been heavily criticized because they no longer provide a reasonable starting point for sentencing." *United States v. Spencer*, 700 F.3d 317, 325 (8th Cir. 2012). The guidelines place an inordinate emphasis in fraud cases on the amount of loss. *United*

33

*States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006), aff'd 301 F. App'x 93 (2d Cir. 2008). "As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear 'objective,' tend to place great weight on putatively measurable quantities, such as the weight of drugs in narcotics cases or the amount of financial loss in fraud cases, without, however, explaining why it is appropriate to accord such huge weight to such factors." *Id.* By focusing so much on loss amount, the fraud guidelines fail to account for the panoply of factors courts must consider at sentencing and "effectively guarantee[] that many such [guidelines] sentences would be irrational on their face." *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012). In this case, the sentencing range recommended by the guidelines overstated the seriousness of this offense, and this resulted in a sentence that was longer than necessary to achieve the goals of sentencing. The District Court erred in imposing a 48 month sentence in this case.

\*   \*   \*

In sum, the District Court erred when it enhanced Mr. Lopez based on the intended loss amount, rather than actual loss amount and when it allowed the government to withhold it motion for the third point for

acceptance of responsibility. The District Court imposed a procedurally and substantively unreasonable sentence when it imposed a 48 month sentence for Mr. Lopez.

# CONCLUSION

For the foregoing arguments and citations of authority, Mr. Lopez respectfully requests that the Court reverse and remand for resentencing.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*/s/ M. Caroline McCrae*
M. Caroline McCrae
ASS'T FEDERAL PUBLIC DEFENDER
Attorney for Appellant Lopez
250 S. Australian Ave, Suite 400
West Palm Beach, Florida 33401
Phone:  (561) 833-6288
Email:  caroline_mccrae@fd.org

36

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 7,634 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

*/s/ M. Caroline McCrae*
M. Caroline McCrae

**CERTIFICATE OF SERVICE**

I certify that on this 22nd day of February 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day via CM/ECF on Lisa Tobin Rubio, Assistant U.S. Attorney, 99 N.E. 4th Street, Miami, FL 33132.

*/s/ M. Caroline McCrae*
M. Caroline McCrae